# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANNY LEE FLECK, | Civil Action No. 11 – 64J |
| Petitioner, | |
| v. | District Judge Kim R. Gibson |
| | Chief Magistrate Judge Lisa Pupo Lenihan |
| FEDERAL CORRECTIONAL INSTITUTION, and WARDEN R. WERLINGER, | ECF Nos. 5, 14 |
| Respondents. | |

## REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that Petitioner's Motion for Summary Judgment (ECF No. 14) and Petition for Writ of Habeas Corpus (ECF No. 5) be denied.

**II.  REPORT**

Petitioner, Danny Lee Fleck, a prisoner currently confined at the Federal Correctional Institution at Loretto, Pennsylvania ("FCI-Loretto"), has submitted a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging the results of a prison disciplinary proceeding. (ECF No. 5.)  As relief, Petitioner requests that the Court expunge his record, restore 15 days of Good Conduct Time taken from him as a result of the discipline, and restore his job in Unicor, which he presumably lost due to his time spent in disciplinary segregation as part of his sanctions.

## A. Relevant Factual and Procedural History

On July 22, 2010, Petitioner was issued an incident report for violation of Code 201, Fighting With Another Person. (ECF No. 18-2 at 7.) The Incident Report, number 2044027, stated:

> On 07-22-2010, at approximately 12:00 p.m., an SIS investigation was completed. The investigation revealed that on 07-12-2010, at approximately 5:15 a.m., inmate Fleck, Danny, [Register Number omitted] and inmate [name and Register Number omitted] were involved in a physical altercation in the Dorm Housing Unit. Specifically, inmate Fleck and inmate [name omitted] were seated in the television area of the Dorm Housing Unit at FCI Loretto. Inmate Fleck and inmate [name omitted] entered into a heated argument concerning a song and their experience in the 1960's. The argument resulted in inmate Fleck and inmate [name omitted] agreeing to depart the television area to resolve the matter. As the inmates stood, more heated words were exchanged, resulting in a physical altercation. Inmate [name omitted] struck inmate Fleck in the face with a closed fist, which resulted in inmate Fleck falling to the ground, at this time inmate [name omitted] struck inmate Fleck additional times and departed the area. Inmates in the surrounding area assisted inmate Fleck to his feet and he entered the unit bathroom to attempt and clean himself. Neither inmate Fleck nor inmate [name omitted] reported the incident prior to staff becoming aware of the altercation.

(ECF No. 18-2 at 7.) The incident report was written by staff on July 22, 2010, at 2:30 p.m., and was delivered to Petitioner that same day at 6:15 p.m. (ECF No. 18-2 at 7.) Petitioner was read his rights, and he stated that the report was "basically accurate in regard to the argument" but said he was "'sucker punched' and never fought back so he shouldn't be charged with fighting." (ECF No. 18-2 at 8.)

Petitioner's Unit Discipline Committee ("UDC") hearing was held on July 26, 2010. According to the report, Petitioner told the UDC, "We were having an argument. We got up to talk about it. I got sucker punched and kicked in the groin area. I never hit him." (ECF No. 18-2 at 7.) The UDC referred the matter to the Discipline Hearing Officer ("DHO") for further disposition. (ECF No. 18-2 at 7.) That same day, Petitioner received written notice of the

charges against him and the disciplinary hearing to be held before the DHO. (ECF No. 18-2 at 12.) He was also given a list of inmate rights at disciplinary hearings. (ECF No. 18-2 at 10.)

Petitioner's disciplinary hearing was held on July 28, 2010, at which time he waived his right to staff representation and did not call any witnesses. (ECF No. 18-2 at 14.) The DHO considered the SIS investigation, which included eyewitness testimony, photographs, and medical assessments of both inmates. (ECF No. 18-2 at 14.) The DHO also considered Petitioner's admission at the hearing where he stated, "Yes, that is true. I was involved in a verbal disagreement, which led to him striking me. I don't remember if I struck him back, or not." (ECF No. 18-2 at 14, 15.) In his findings, the DHO also noted that a "fight" is a "hostile physical or verbal encounter, or engagement between two or more persons" and that the incident was considered a fight at the moment that Petitioner returned the aggression towards the other inmate. (ECF No. 18-2 at 15.)

At the conclusion of the hearing, the DHO determined that Petitioner committed the prohibited act of Fighting With Another Person, Code 201, and sanctioned Petitioner to 30 days of disciplinary segregation (15 days suspended pending 180 days clear conduct), 15 days disallowance of Good Conduct Time, and 180 days loss of visiting privileges. (ECF No. 18-2 at 15.)

Petitioner appealed the decision of the DHO, contending that he did not fight but was instead assaulted by the other inmate. (ECF No. 11-1 at 2.) In denying the appeal on March 15, 2011, the Administrator of National Inmate Appeals stated that "the prohibited act [of Fighting With Another Person] is committed when an inmate engages in a hostile, verbal or physical altercation with another person," therefore, "your admission of the verbal altercation alone is sufficient to sustain the Code 201 violation." (ECF No. 11-1 at 2.)

**B. Discussion**

Petitioner principally complains that he should not have been charged and found guilty of a Code 201 violation because BOP regulation, namely, the FCI-Loretto inmate handbook, does not state that a verbal disagreement constitutes a fight. He argues that such a violation requires a "physical altercation," and he insists that he did not threaten or strike the other inmate but was instead assaulted. Petitioner also argues that he did not make an admission of guilt at the disciplinary hearing, which the DHO partly relied on in finding that Petitioner committed the prohibited act of Fighting With Another Person. Also with respect to the hearing, Petitioner argues that there was insufficient evidence to support the conclusion that he committed the violation because no corrections officers witnessed the incident and no surveillance videos or recordings captured the event. He also maintains that there were inmates who witnessed the incident that were not interviewed or questioned during the investigation.

The Fourteenth Amendment of the United States Constitution provides in pertinent part as follows: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." Federal inmates possess a liberty interest in good conduct time. *See* Wolff v. McDonnell, 418 U.S. 539, 555-57 (3d Cir. 1991); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991). Accordingly, "[h]abeas corpus relief is available to a prisoner who has been sanctioned in violation of due process to a loss of good conduct time." Robinson v. Warden, 250 F. App'x 462, 464 (3d Cir. 2007).

In Wolff, where the plaintiffs were deprived of good time credits as a severe sanction for serious misconduct, the Supreme Court held that such inmates had various procedural due process protections in prison disciplinary proceedings, including the right to call witnesses and to appear before an impartial decision-maker. 418 U.S. at 563-73. In particular, the Court

recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. Nonetheless, the Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed. Id. at 563-71. The Court set forth the following five requirements of due process in a prison disciplinary proceedings: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional security or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case" Id. at 570; and (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. Id. at 563-71.

Where the due process requirements of Wolff are met, the decision of the hearing examiner will be upheld if there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 445, 455 (1985); *see also* Young, 926 F.2d at 1402-03 (applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56. Under Hill, judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain

5

procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. Id. at 457.

In the instant case, it is apparent upon review of the record that Petitioner was afforded each of the due process protections required by Wolff in connection with the disciplinary proceedings at issue. Specifically, he received the opportunity to appear before a DHO, and in fact did so at the hearing on July 28, 2010. He was provided with written notice of the charges against him, a copy of his rights and notice of his disciplinary hearing, which were delivered to him on July 26, 2010, providing him with more than twenty-four hours notice before his hearing. Also, Petitioner was provided with the opportunity but waived his right to call witnesses as well as his right to staff representation. Finally, Petitioner was provided with the DHO's report which provided a thorough written explanation of the DHO's decision, as well as the evidence relied upon and the rationale for the decision.

As for Petitioner's challenge to the sufficiency of the evidence that the DHO considered in finding that he violated Code 201, the Court finds that the evidentiary standard of Hill was satisfied in this case. Petitioner has presented no evidence that a Code 201 is limited to physical altercations. He has presented no BOP regulation, code manual, or FCI-Loretto policy that defines this disciplinary code as inapplicable to verbal altercations. With respect to Petitioner's allegation that, at the disciplinary hearing, he did not admit guilt or admit to being involved in a verbal altercation with the other inmate, the Court finds that the evidence before the DHO was still sufficient to support the outcome of the hearing even absent Petitioner's statement. Moreover, even though Petitioner disputes making the statement to the DHO, he does not dispute the facts contained in the incident report or that he was, in fact, involved in a verbal

6

confrontation with the other inmate. Indeed, Petitioner's primary complaint is that a verbal confrontation is not equivalent to a fight to warrant a Code 201 violation.

Additionally, to the extent Petitioner contends that the "some evidence" standard has not been satisfied because there were no corrections officers who witnessed the incident nor surveillance videos or recordings that captured the event, his argument is unavailing. The relevant question is whether there is **any** evidence in the record that could support the conclusion reached by the DHO, not the lack of particular evidence. As previously noted, the DHO's findings are supported by this evidentiary standard. Petitioner's argument that there were others who witnessed the incident that were not interviewed or questioned during the investigation is also unavailing. Petitioner was afforded the opportunity to call witnesses during his disciplinary hearing which he chose not to do. If he believed that the facts in the incident report were incorrect, he was free to call whatever witnesses he desired to rebut the report. He is not arguing that he was entitled to an inmate representative and, under the standard set forth in Wolff, he was not.

The Court therefore concludes that Petitioner was afforded all that due process requires in his disciplinary proceedings, the action against him was not arbitrary, and the DHO's findings are supported by "some evidence." Thus, Petitioner is not entitled to habeas relief, and the petition should be denied.

Lastly, to the extent Petitioner challenges the severity of the sanctions imposed by the DHO, he is also not entitled to relief. BOP regulations authorize the BOP to impose sanctions when an inmate "is found to have committed a prohibited act." 28 C.F.R. § 541.13(a). Prohibited acts under BOP regulations include High Category Code 201, Fighting With Another Person. 28 C.F.R. § 541.13, Table 3. The sanctions that may be imposed upon a finding of guilt

of a "High Category" offense include, *inter alia*, disallowance of fourteen to twenty-seven days of earned Good Conduct Time, up to thirty days disciplinary segregation, and loss of privileges. 28 C.F.R. § 541.13, Table 3. The sanctions imposed on Petitioner are within the range of appropriate sanctions for "High Category" offenses.[1] *See* id.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Petitioner's Motion for Summary Judgment (ECF No. 14) and Petition for Writ of Habeas Corpus (ECF No. 5) be denied.[2]

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B)&(C)] and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: February 14, 2012

Lisa Pupo Lenihan
Chief United States Magistrate Judge

---

[1] Additionally, it is presumed that Petitioner lost his job in Unicor due to his time spent in disciplinary segregation as part of his sanctions. Petitioner seeks restoration of his Unicor job; however, inmates have no right to have a job in prison or hold a particular job while in prison. In this regard, inmates do not have a protected liberty interest in prison employment. *See* James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir. 1989).

[2] Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253) codified standards govern the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).

cc: Danny Lee Fleck
    41570-037
    Loretto
    Federal Correctional Institution
    Inmate Mail/Parcels
    P.O. Box 1000
    Loretto, PA 15940

    Counsel of record.